Ms. Peterson. Yes. Good morning, Your Honor. Good morning. Ms. Norna Peterson from Edwin Mejia. Speak right up. Okay. First, I would like to deal with some sentencing issues. The first one is the fact that the Court did not consider the 3553 factors when he sentenced. How do you know that? I mean, the Court was told 3553. They know this the way I know that I'm looking at you, and you know that you're looking at me right now. Well, if you look at the transcript, there's just no indication that he considered it. He didn't say, I've read your papers. You know, he didn't say, I've considered it. He basically, he mentioned the fact that he agreed it was supposed to be a level 34. He did mention imperfect, and he didn't agree with imperfect entrapment and acceptance and he believed he was entitled to acceptance of responsibility. But there were several other factors that the defense attorney brought up in regards to the 3553, and the Court didn't even say that they read it or considered it or anything. And I think in regards to the new, the cases of Gall and Rita, the Court is required to at least indicate somehow, or there has to be an indication on the record, that there was a consideration, and the record is just devoid of that. Okay. Next. Okay. And then the other issue is that he received a criminal history point for resisting arrest, which he shouldn't have received because his probation was suspended. It was suspended and terminated. And according to the Gonzales case, under that, the U.S.S.G. under that guideline, 4A1.2, the Court said that a suspended sentence is not counted. And in the Gonzales case, it was a suspended sentence for a term of imprisonment of more than 30 days. He was at the sentence was enhanced based on resisting arrest? Right. In a case of the criminal history. In a calculation, there was one prior conviction for resisting arrest. It was for intoxication and also resisting arrest. And he received one criminal history point for that. And he should not have received that because he was sentenced to probation and probation was suspended. What was the guideline range that Judge Wilson used in this case? He said it was a level 34. What was the range? Actually, I'm not sure. He received low end. I can't remember offhand what the range was. What would the range have been if that point had not been attributed? Well, it would have reduced him one criminal history point, so it would have been lower. So you know what the range would have been? I'm not sure of the calculation. Would the sentence actually given have been in the range? Excluding the one point. I believe no, because he was given a low end and it would have brought him down one criminal history point. I'm not being clear. I guess I'm not being clear with my question. If we could magically take out of Judge Wilson's head that one point, you said the range would be lower. My question is the sentence actually given, would it have been within that lower range? And if you don't know, you could pick it back up on rebuttal, if you like. Yes, I'm going to pick it up on rebuttal. Okay. Was there an objection tendered to that in the trial plan? Well, there was an objection, but it was actually based on the fact that he thought he hadn't been convicted of resisting arrest. So we review this for plain error. Yes. And then the other issue was in regards to insufficient evidence for drug quantity. And that's because the expert said the quantity for count 2 was 147.5 grams and not 447.5 grams. And actually, there really wasn't any other evidence in regards to drug quantity. There wasn't a report submitted or anything else that contradicted that. That looks like a transcription error. Well, it could be, but then we don't know whether it was a transcription error. Because there's one reference to 147, all the others are 447. And he says almost a pound. Well, my argument is just that we don't know whether it's actually an error in the indictment or transcription error or whatever, because the expert, you know, did say it was 147.5. The jury heard a conversation in which the two agreed to a one-pound deal. But still, as far as the actual, you know, I mean. A reported phone conversation in which Mejia informed Terry Utzon he would sell methamphetamine for $7,400 a pound. But the problem with that is that the defendant doesn't necessarily know the purity either of, you know, of what he has. So it could actually have been much less as far as purity goes. But also, the other issue I wanted to bring up was in regards to the shackling. Because the defendant did, defense counsel did object to the shackling. And there was some question as to whether the jury saw it or not. I didn't see any question. On the basis of what do you say there was some question? Well, the judge just said from where I'm looking, you know, it doesn't look like the jury saw it. Then what's the question? Well, I'm saying that. You're just asking us to get. It may be possible. You're asking us to. That the jury was wrong. You're not going to get anywhere on appeal. But I understand. But it's more than that. But there's, it's also more than that. Because it's not just whether the jury saw it, but also it's a due process violation when it interferes with a defendant's defense. And in this case, the shackling did interfere because he apparently wanted to go to the sidebar. How do you know that? It's on the record that he had wanted to go on sidebar, but he didn't because of the shackling. Was there an objection at that time? Well, the objection was later. The sidebar incident happened first, and then the counsel objected later in saying that he wanted him to, you know, he objected to his continued shackling because so that he would be free. Did counsel say, Your Honor, Your Honor, I'd like to clear the court so my client can accompany me to the sidebar? No, he didn't say that. And I think on the other issues, I'd like to submit unless the court has some questions. Well, I have a question about this one point. If I read the record right, the imposition of sentence was suspended, and then at the same time, the defendant was placed on summary probation for a period of two years, less certain credit. So there was a sentence of probation for more than a year. That was, well, I believe there was two counts at the time. And as far as the resisting arrest goes, that was just, he was supposed to serve 16 days in jail as part of, as a condition of probation, and then probation was suspended. So. No, the way I got it read here, he pleaded guilty, and as to count one, imposition of sentence suspended. And then let's see what it says. It was count two. The resisting arrest was count two. I can't see that it's count two, but in any event, on count two, you're saying he got probation for two years, and then it was terminated? It was suspended. It was, he was supposed to serve 16 days in jail as a condition of probation. It was suspended, and then it was terminated. I mean, that's what. Yeah, but actually it was, two years was imposed on probation, and then terminated. And as I read this record, now, if you've got something that says otherwise, I'd like to know. Don't the guidelines say it's the sentence imposed and not the actual time served? No, not according to case law, not according to Gonzales. And in fact, in some, in some cases, that's true, but when it's in regards to this calculation of a misdemeanor offense, that's not true, according to Gonzales. And I'm trying to find. What's the? Well, I will look in the record again, and on rebuttal. Now, you're relying on Gonzales? Yes. And that's in your brief? Yes. Give me the cite. I didn't read it. Okay, let's see if I can. My understanding that the imposition of sentence is what counts, and regardless of felony or misdemeanor, but I could be wrong. Okay. It's 506 F3rd 940. It's in the other, the library. Okay, you have a little bit of time for rebuttal, and you maybe can pick up on a couple of those points when you get back up. We'll hear from the government at this time. Counsel? Good morning, Your Honor. Please, the court, Raymond Agon, on behalf of the United States, if I could address, I guess, in the order of that counsel, addressed the argument. Starting off with the sentencing issue, Judge Wilson did, in fact, address the guidelines at sentencing. And as is addressed in government's brief, Judge Wilson specifically said, and I quote, the court in imposing this sentence did consider the guidelines and did conclude that the guidelines have the defendant at a criminal history category of three and an offense level of 34. There is nothing that states that the court did not consider the guidelines, that the court did not consider the 3553A factors. As recent case law suggests, the court need not take off each and every factor, 3553A factor, in imposing the sentence. The – there seems to be adequate explanation of the reasons for the sentence, and that can, in fact, be inferred from the PSR and the record as a whole. Now, Judge Wilson was also the judge that presided over the trial and was aware well of the facts. Judge Wilson had received both the sentencing memorandum from the government and from defense counsel. And essentially, as held in Carty, United States v. Carty, failure to individually address Defendant's 3553A arguments are not considered to be erroneous. Addressing counsel's argument regarding the termination of the summary probation, what we have here essentially is a two-year summary probation sentence that was, in fact, terminated after a couple of days from Defendant's release after Defendant served. It's sentence-pronounced, isn't it? It's the sentence-pronounced, and that is correct. And as the guideline – Section 4A1.2, comment 2, is that it? That is correct. And as the guidelines note apparently, precisely, that the criminal history determined is based on the sentence pronounced, not the length of time actually served. Well, your counsel says – I can't find the case – says that doesn't apply to misdemeanors. I – well, I think United States v. Edwards, which is a Sixth Circuit case in 2001, directly addresses that point. And what we had in Edwards was a defendant who had a combined prior convictions for reckless operation of a motor vehicle and for administrative license suspension. And there, defendant had received a one-year term of probation, and that term of probation was terminated after six months. And the court there held that we conclude that the language of 4A1.2c1a, which is what's at question here, is too clear to permit an interpretation where it wouldn't allow us to say that this is the sentence that imposed – the sentence imposed does not apply. And essentially, the court held that the term of probation imposed by the trial court rather than the actual length of probation served by the defendant is controlling on the calculation pursuant to 4A1.2c1a. So I think United States v. Edwards and the language in the guidelines themselves clearly address that point. As to the drug quantity at issue – Well, the Gonzales case dealt with a suspended sentence. Did you read the Gonzales case? I'm very briefly familiar with the Gonzales case, but – I'm very briefly familiar with it. Did you read it? I've read it, yes, I have. My understanding of the Gonzales case, however, is different than here, because Gonzales deals with a suspended sentence, where here we have a sentence that's in fact terminated rather than suspended, so there's some distinction there. However, neither Gonzales nor did the other case, Jimenez, that's cited by counsel, is on point at issue here. We have the specific language in the guidelines and case law interpreting those – that language in the guidelines that specifically addresses the point, directly on point. As to counsel's argument regarding the drug quantity, even if we were to assume that the witness that was testifying inaccurately misspoke and said it was 147.5 grams, the bottom line is it makes no difference. The – it is not an element of the drug quantity, it is not an element of the offense. In fact, the jury was provided with the jury verdict form, only required the jury to find that the defendant was in possession of 50 grams of methamphetamine. Now, at sentencing, we have a preponderance of standards that applies. And during sentencing, even if we were to assume that the witness testified as 147.5 grams, that was 147.5 grams of ice. And ice, as the guidelines defines, is methamphetamine with 80 percent, that is over 80 percent cure. The one-pound transaction, the 100 – also assumed 147.5 grams that we have at issue here, was at 84 percent purity, so it was clearly ice. What we also have is on the – on October 27th, when the defendant was apprehended, we have 35.2 grams at 83 percent purity. So that was also ice. So if we combine those two together, even if we assume the witness misspoke and said that the defendant was in possession of 50 grams of methamphetamine, we have 35.2 grams of pure ice. So that's what establishes a base level – offense level of 34. Now, as to the Court's question whether there would have made a difference in terms of that one criminal history point, it would have made a difference, essentially – sorry for backtracking – but it would have made a difference. The sentencing range would have been different, because essentially what we have is an offense level of 34 at Category 3 versus an offense level of 34 at a Category of 2. Now, the difference, the disparity between Category 3 and Category 2 in this case would have been a low-end sentence of 168 to 210 months versus the low-end sentence that was actually imposed here, which was starting at 188 months. So there is some – there is a difference there. Now, as far as counsel's argument regarding Shacklin, obviously that was never objected to. The defendant never objected – made an objection or a request to attend sidebar, and based on the United States v. Sherwood, the defendant clearly weighed that argument. In addition, there was no evidence whatsoever that jurors, potential jurors or the jurors, in fact, selected to sit on the trial, had any issues of seeing Defendant Shacklin. As Judge Wilson specifically found, neither the jurors sitting in the jury box or the jurors seated behind the defendant at any time were able to observe the Shacklins. He specifically said, I'm in a position to observe, and I don't see that happening. In addition to that, there's no evidence whatsoever to indicate whether there was any issue and what the line of sight was for the jurors seated behind the defendant. Was there a paneling? Was there a divider behind the defendant? How high was that? Where were the jurors sitting? There was no indication whatsoever that there's any possibility that the jurors could in fact see Defendant Shacklin. All we have is Judge Wilson specifically making a finding that I'm in a position to observe, and I don't see that happening. And no objection. And no objection. I believe those are the issues addressed by counsel. And unless the Court has any questions, I will submit. I don't see any. Thank you for getting in, counsel. You have a little bit of time for rebuttal. First of all, in regards to the Shacklin issue, what happened was Defendant's counsel did object to the Shacklins on the second day of trial. But he didn't, as far as the court to Shacklin per se, yes. And he said that previously the client wanted to come to sidebar, but felt he couldn't because of the Shackles. And so it's not really having to do with whether he was objecting to not being able to go to sidebar. The point is he was objecting to being shackled because it was interfering with his defense. Because next time, you know, if he wants to go to sidebar, he wouldn't be able to do it, or there would be a great disruption if they had to clear the courtroom while they unshackled him and, you know, brought him over. Happens all the time. Counsel says, in order to defend this case, my client has to accompany me to the sidebar. Clear the courtroom, bring him up, if there's a reason. Well, anyway, so that was the argument. It was not objection to not being presented at sidebar. It was objection to the Shacklins. And the other thing is, in regards to that prior misdemeanor conviction, it does say on page 2 and 3 of the excerpts, in the very top, it says, Count 1 is for public intoxication. Count 2 is for resisting arrest. And then on page 215, it's hard to see because in the very bottom, it says, Count 2. And then in the next page, it says, imposition of sentence suspended and defendant placed in summary probation and with 16 days in jail. But it says, imposition of sentence suspended. And that was on page 216. And you're saying the Gonzales case covers that language? Right. And Gonzales actually is right on point. And the reason is, it deals exactly with a 4A1.2c1. And it says that the Gonzales case We'll put the language on Gonzales. Okay. It says, it says, let's see. Certain suspended sentences, such as sentences for felonies and non-qualifying misdemeanors, are accountable prior sentences resulting in one additional criminal history point under 4A1.1c. However, totally suspended sentences for qualifying misdemeanors listed in Section 4A1.2c1 are not. Totally? Totally? Yeah. Totally suspended. What's the difference between a suspended sentence and a totally suspended sentence? I believe they were dealing with a prior case where there was a, the probation was, they didn't serve the entire sentence or something like that. I mean, they're referring to a prior case. Maybe no, maybe no pre-trial detention credit. Yeah, I can't remember. But they're referring to a previous case. That's why they said that. But in this case, the sentence was totally suspended, just like in Mr. Mejia's case, the sentence was totally suspended, so he should not get that. What about the question I asked you about kicking out the one point, what the range would have been? Do you know that? Yeah, you know what? It's okay to say I'm sorry I don't. Actually, I think I did, I did calculate it. Let me just double check here. I think I did. Well, basically, yeah, I'm not sure of the calculation. I know that he went down one point, though. Okay. Case just argued will be submitted. Thank you both for coming in today. And we'll proceed to the last case on the argument calendar, which is the United States v. McCallop. Counsel will come forward.
judges: Trott, Hawkins, Bright